54  121
54  536
s54  701

## JAMES A. BANNISTER

*v.*

## EDWARD A. MILLER et al.

1. A loan of money to a person upon his own credit, for the purpose of enabling him to contribute his share of the capital in a firm, is not a partnership debt.

2. An insolvent firm cannot devote any of its assets to the payment of individual debts of its members.

3. An insolvent firm made a chattel mortgage on all its property to a trustee, to sell the same and pay, first, three creditors of the individual members of the firm. On bill filed by firm creditors—*Held*, that this provision was void.

4. The discharge of an arrested debtor under the provisions of the Insolvent Debtors' act only confers immunity from any arrest on account of any debt provable under these proceedings; it does not bar a subsequent suit for such a debt.

5. A defendant who sets up certain facts in his answer and states that the consequence of such facts is to exhibit a particular defence, cannot, on final hearing, use the same facts to support a different ground of defence, to which the attention of the complainant is not called.

---

The bill is filed by four judgment creditors, on behalf of themselves and such other creditors as may choose to come in, against a partnership, for the purpose of setting aside, in part, a mortgage executed by the partnership.

The facts are these : Edward A. Miller and Theodore S. Miller entered into a copartnership on March 7th, 1891, the partnership to continue for four years from May 1st, 1891.

By the terms of the articles of copartnership, each partner agreed to contribute as capital the sum of $4,000.

Mr. E. A. Miller, of the $4,000 which he invested, borrowed $2,800 from Catharine Barkhorn and $1,200 from Amelia B. Miller.

Mr. T. S. Miller borrowed his $4,000 from John Rilly.

The sum of $8,000 was deposited to the credit of the firm on April 1st, 1891.

On February 26th, 1892, Edward A. Miller and Theodore S. Miller executed a chattel mortgage covering all the tangible, and practically all the available, property belonging to the firm. The mortgage was made to John C. Miller, as trustee, and by it the trustee was authorized to sell the property assigned to him, and after paying all expenses incurred in selling the property, to pay a list of creditors in an order mentioned. He was to pay John Rilly the sum of $4,000, Catharine Barkhorn $2,800 and Amelia B. Miller $1,200. These three were to be first paid *pro rata*. After paying these three creditors he was to pay, consecutively, a list of creditors, the last name upon which was that of one of the complainants, Lounsbury, Matthews & Company. This was the only one of the complainants named in the list.

The trustee proceeded to sell and realized nearly $14,000. He paid Rilly, Barkhorn and Amelia B. Miller in full. He also paid all of the creditors named in the list, in full, except Lounsbury, Matthews & Company, the sum still remaining in the hands of the trustee being insufficient to pay to the last creditor more than the sum of $1,385.71, which payment was received by said creditor.

Subsequently, four creditors of the firm commenced actions, and obtained judgments against the firm. Samuel T. Laird obtained a judgment of $3,900.95, George E. Lounsbury and others a judgment of $4,088.92, James A. Bannister a judgment of $4,345.06, and the James A. Bannister Company a judgment for $348.44. Executions were issued upon those judgments and returned unsatisfied on February 7th, 1893.

The bill charges that the first three creditors paid by the trustee were not firm creditors, but were creditors of the individual members of the firm; that there being insufficient from assets to pay the firm creditors, a diversion of $8,000 from the receipts of the sale of the firm property, to the payment of individual creditors, was a fraud upon the former class, and inasmuch as the property of the firm cannot be traced *in specie*, the complainants ask that these individual creditors, who received these amounts of money, shall be decreed to repay them.

Bannister *v.* Miller.

*Mr. Robert H. McCarter,* for the complainant.

*Mr. Philemon Woodruff* and *Mr. Frederic W. Stevens,* for the defendants.

REED, V. C..

It is entirely clear that the first three named in the schedule of creditors, to whom money realized from the sale of the firm property was paid, were not creditors of the partnership, but were creditors of the members of the firm individually. The amounts which make up those three debts were borrowed by the respective partners upon their own credit, and, although the money so borrowed constituted the capital with which the firm commenced its business, and was presumably used in the business, yet the obligation for its repayment rested entirely upon the individual by whom it was borrowed.

The doctrine seems to be entirely established, to use the language of Mr. Justice Lindley, "that if several persons agree to become partners, and to contribute each a certain quantity of money or goods for the joint benefit of all, each one is solely responsible to those who may have supplied him with the money or goods agreed to be contributed by him." *Lind. Part. 202.*

The English cases in support of this rule are to be found in the notes to the text just mentioned, and the cases in the American courts holding the same doctrine are collected by Mr. Bates in his work on *Partnerships* § *446.*

An analysis of those cases would be profitless. They all rest upon the obvious absence of any agency, express or implied, in the person borrowing to bind other persons for what is understood to be a personal transaction, entirely apart from the business of the firm. Therefore, I find that the debts in question were the debts of the two Millers respectively.

I also regard it as entirely clear that, at the time of the execution of the chattel mortgage, the firm was insolvent. It had arrived at a stage in its business when it was confronted with an array of debts which rendered its continuance practically impossible. The sale of all its property was made openly and

apparently under favorable conditions.  It did not realize enough
to pay the partnership debts, and, after deducting the $8,000
which was paid to the first three on the list of creditors, the
deficit between the assets remaining and the partnership debts
is marked.  The question remains whether, in this posture of
affairs, the firm possessed the ability to apply any of its assets
to the payment of those three debts.

A firm can do as it pleases with its property so long as it
retains enough to pay its creditors.  When, however, it is so
placed that any devotion of its assets to a purpose other than its
own business, or the liquidation of its own debts, wrongs its own
creditors, its power to so divert ceases.  And the payment of the
individual debts of its members is, under these conditions, a
diversion of its assets.

In dealing with the estate of an insolvent firm, or an insolvent
member of the firm, the courts of equity in England draw a
sharp line between the two classes of creditors.  The joint prop-
erty is devoted to the payment of the joint debts, and separate
debts are paid out of the separate estate of each partner. *Lind.
Part. 693.*

This principle was recognized and applied in this state by
Chancellor Green in *Matlock* v. *James, 2 Beas. 126,* and in the
court of appeals by Mr. Justice Depue in *Clements* v. *Jessup, 9
Stew. Eq. 569,* and by Mr. Justice Dixon in *Arnold* v. *Hagerman,
18 Stew. Eq. 186.*

It is indeed insisted by counsel for the defendants that the
equity of partnership creditors in the partnership assets is a
derivative one, resting upon their right to be subrogated to the
right of each partner to have the joint assets applied to the
liquidation of the joint liabilities; and it is argued that as
the partners have parted with their rights by the execution of
this chattel mortgage, therefore the equity of the firm creditors
is extinct.  But, as is pointed out in the last-mentioned case, the
right of firm creditors to follow firm assets may subsist by force
of the statute of frauds, after the ownership has passed from the
firm to others.  As an instance where this rule came into opera-
tion, the case of *Matlock* v. *James, supra,* was mentioned, in

which case two members of a firm consisting of four conveyed their individual half interest in land held for partnership purposes to an outsider, to pay their individual debts. The opinion also cites with approval the language of Mr. Justice Depue in *Clements* v. *Jessup, supra.* "Partnership creditors, in equity, have an inherent priority of claim upon partnership property over individual creditors, and a transfer of partnership property by one partner, with the consent of the other partners, or by all the partners, to pay individual debts, is fraudulent and void as to firm creditors, unless the firm was then solvent and had sufficient property remaining to pay the partnership debts."

I conclude, therefore, that those provisions contained in the chattel mortgage which provided for the diversion from the firm assets of a sum sufficient to pay the three individual debts already mentioned, was a fraud upon the partnership creditors. The firm creditors have a footing in a court of equity to follow and reclaim such assets, so far as it is essential to the liquidation of their claims. *Vandoren* v. *Stickle, 9 C. E. Gr. 331;* affirmed, *12 C. E. Gr. 498.*

Aside from the general absence of equity, the defendant interposed other objections to the right of the complainant to a decree. One of these appertains to one of the complainants alone. It is objected that Lounsbury, Matthews & Company, who received a part payment upon their claim from the money arising from the sale under the chattel mortgage, by the reception of such money elected to stand upon the validity of the mortgage, and so estopped themselves from joining in this bill to avoid any part of that instrument. Without respect to the other answers made to this contention, it is sufficient to say that it nowhere appears that at the time he accepted this money he was aware of the fact that any of those to whom the money was to be paid were not firm creditors.

In respect to the retention of the money so received, it is sufficient to say that the recipient tendered himself willing to come in with the other creditors, waiving any preference by reason of the sum already received. So that in the distribution of the money received in this suit he will altogether receive no more than any other creditor.

The defendants claim immunity from liability upon another
ground.   This matter of defence rests upon the following facts
appearing in the case.   It appears that the actions brought by
the complainants, in which the judgments already mentioned
were recovered, were commenced by *capias ad respondendum,*
and after the return of execution *capias ad satisfaciendum* were
issued, upon which the sheriff took the bodies of the two Millers
into custody.   They were discharged from arrest, pursuant to
the provisions of the Insolvent Debtors' act, having made and
delivered an inventory of their property and given bond.

The defendants insist that the complainants, having elected to
proceed against the bodies of the Millers, are barred from pro-
ceeding in any other method, and that as to the complainants,
their debts must be regarded as satisfied.

There is no substance in this contention.   The fact of a dis-
charge under the Insolvent act, by the express terms of section
28, is to relieve the debtor's person from liability to imprison-
ment for any provable debts against him at the time of the
assignment made by him under the act, subject to this restric-
tion only—the creditor is free to pursue his remedy against the
discharged debtor or his property for any debt

The counsel for the defendant, at the close of his brief, sug-
gests another point, which, it is claimed, shuts out the present
complainant from pursuing this property.   It is that the assign-
ment under the Insolvent act carried to the assignee the right to
recover all the property of the Millers then existing, and so
included the claim which is now the subject-matter of this suit.
This defence should have been interposed by a plea, but it is
neither well pleaded by plea nor in the answer.   In the answer,
the fact of an assignment is not stated at all, but is only to be
inferred from the fact of the discharge, which is stated.   But if
it is a legitimate inference, from the facts stated, that an assign-
ment was made, yet an inspection of the answer will show that
the statement of the arrest and discharge is made as the ground
for a specific defence, viz., that the debt was, by such arrest,
discharged.

Now, that a defendant is only bound to state facts and not

conclusions of law, is a fundamental rule of pleading; but an equally well-established rule is, that if the pleader sets up facts to establish a particular line of defence which he represents to be the consequence of these facts, he will not be permitted to use them for the purpose of establishing a different defence from that to which, by his answer, he has drawn the complainant's attention.   *1 Dan. Pl. 713.*   ·

I will advise a decree that the individual creditors of the members of the firm be declared to hold the property they had received from the trustee, under the chattel mortgage, in trust for the creditors of the firm; that a receiver be appointed to receive and disburse such money, and that the said Catharine Barkhorn, Amelia B. Miller and John Rilly be decreed to pay to the receiver the moneys that they have received from the trustee under the chattel mortgage.